UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| JUDITH A. BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>SHIANN HAUPERT, IN HER INDIVIDUAL CAPACITY AS A POLICE OFFICER FOR THE CITY OF GETTYSBURG; DAVID MOGARD, IN HIS INDIVIDUAL CAPACITY AS CHIEF OF POLICE FOR THE CITY OF GETTYSBURG; CODY HOLZER, IN HIS INDIVIDUAL CAPACITY AS DEPUTY SHERIFF FOR THE COUNTY OF POTTER; TRAVIS CARLSON, IN HIS INDIVIDUAL CAPACITY AS DEPUTY SHERIFF FOR THE COUNTY OF POTTER; CURTIS HAMBURGER, IN HIS INDIVIDUAL CAPACITY AS SHERIFF FOR THE COUNTY OF POTTER; GETTYSBURG, SOUTH DAKOTA, POTTER COUNTY, SOUTH DAKOTA,<br><br>Defendants. | 3:21-CV-03019-RAL<br><br>OPINION AND ORDER GRANTING DEFENDANT TRAVIS CARLSON'S MOTION TO DISMISS |

The Plaintiff Judith A. Brown brings this action against the City of Gettysburg, Potter County, and certain police officers employed by those entities including former Potter County sheriff deputy Travis Carlson. Brown alleges that she was unlawfully arrested and injured after she received and then discarded a speeding ticket. Brown claims that Carlson incorrectly informed the arresting officer that she had been warned multiple times about speeding precipitating the chain of events that led to what Brown contends to be an unlawful arrest and injuries. Because Carlson

is too removed to be the proximate cause of Brown's allegedly unlawful arrest, Carlson's motion to dismiss is granted.

## I. Factual Background[1]

This case arises from a traffic stop that occurred on South Dakota Highway 212 ("Highway 212") approximately one mile west of the City of Gettysburg. Doc. 1 at ¶ 1. On August 26, 2020, defendant Shiann Haupert ("Haupert"), a law enforcement officer employed by the Gettysburg Police Department, was on patrol conducting stationary radar surveillance. Doc. 1 at ¶¶ 7, 18. Haupert observed a vehicle traveling on Highway 212 and activated her radar, clocking the vehicle's speed at forty-seven miles per hour. Doc. 1 at ¶¶ 20-22. The posted speed limit on that section of Highway 212 was thirty-five miles per hour. Doc. 1 at ¶ 23. Haupert initiated a traffic stop with the plaintiff Judith A. Brown ("Brown"). Doc. 1 at ¶¶ 1, 24-26. At the time of the traffic stop, Brown was seventy-six years old and had undergone two open-heart surgeries within the prior eighteen months. Doc. 1 at ¶¶ 5, 26.

After collecting Brown's information, Haupert returned to her patrol vehicle to validate Brown's driver's license via radio with defendant Travis Carlson, ("Carlson"), a Potter County Sheriff Deputy. Doc. 1 at ¶¶ 12–13, 26–27. Carlson reported to Haupert that Brown had been warned "several" times over the past month for speeding but had not received a citation. Doc. 1 at ¶ 27. Brown had actually only received one prior warning for speeding approximately seven weeks earlier on July 9, 2020. Doc. 1 at ¶¶ 28–29. Haupert returned to Brown's vehicle and issued her a citation for speeding and a warning for not wearing her seat belt, explaining to Brown that

---

[1] Because this Court is deciding Defendant's motion to dismiss this Court takes the well-pleaded allegations of the complaint as true. This Court is not making any findings of fact through this Opinion and Order.

the citation was issued due to three previous warnings for speeding within the last month that did not result in citations. Doc. 1 at ¶ 30.

Brown disputed Haupert's assertion that she had received three warnings in a month. Brown signed the citation and declined to receive a copy when offered by Haupert. Doc. 1 at ¶¶ 31-32. As the traffic stop concluded, Brown proceeded to roll up her window, but alleges that Haupert threw copies of the citation through the crack in Brown's window. Doc. 1 at ¶ 33. As Haupert began to walk back toward the patrol vehicle, Brown discarded the citation through her window and began to pull straight forward, attempting to drive away from the scene. Doc. 1 at ¶ 35–36. Haupert saw Brown discard the citation and attempted to chase the vehicle as it pulled away, grabbing onto the door handle while it was still in motion and ordering Brown to stop and exit the vehicle. Doc. 1 at ¶ 37. Brown stopped the vehicle and Haupert pulled the vehicle door open and commanded Brown to turn off the ignition. Doc. 1 at ¶ 38. Brown alleges that Haupert then grabbed her by the wrists without giving her time to turn off the ignition and tried to forcibly remove her from the vehicle. Doc. 1 at ¶ 39. During this altercation, Brown claims that she tried to explain to Haupert that she had recently undergone open-heart surgery. Doc. 1 at ¶ 40. Brown claims that Haupert ignored her pleas and accused Brown of attempting to run her over. Doc. 1 at ¶ 40–43. Haupert physically restrained Brown's wrists while waiting for back up to arrive. Doc. 1 at ¶ 40–43. Brown claims that she attempted to show Haupert her incision scar from her open-heart surgery and states that her cane and handicapped placard were clearly visible. Doc. 1 at ¶ 47. Defendant Cody Holzer ("Holzer"), a Potter County Sheriff Deputy, arrived at the scene and assisted Haupert in removing Brown from the vehicle. Doc. 1 at ¶¶ 10–11, 44–45.

Brown claims that Haupert and Holzer shoved her against the side of her vehicle, restrained her wrists behind her back, and placed her in handcuffs. Doc. 1 at ¶ 45–46. Brown alleges that

she received eight prominent bruises on her arms and legs as a result of being forcibly removed from the vehicle. Doc. 1 at ¶ 48. Brown claims that the officers detained her in a hot patrol car for an extended period before Carlson transported her to the Walworth County Jail. Doc. 1 at ¶ 49. There, Brown was made to disrobe and was forced to undergo a cavity search before being required to wear jail-issued undergarments and a jumpsuit. Doc. 1 at ¶ 50–53. Brown claims she was initially told she would be required to spend the night in jail but was provided no information about how she could obtain her medications for her heart condition and other ailments. Doc. 1 at ¶ 55. Brown was released from the jail on bond approximately twenty-five minutes after she was placed in her cell. Doc. 1 at ¶ 56. As Brown states in her complaint:

> Put another way, [Brown] was forcibly drug out of her car, manhandled, transported, strip-searched, forced to wear jail-issued garments, denied her medications, and denied COVID-19 precautions such as masking and social distancing for a jail stay that lasted approximately 25 minutes.

Doc. 1 at ¶ 57. Less than forty-five days later, the Walworth County Jail was permanently closed after allegations were leveled that the jail was outdated, inadequate, dangerous and a fire hazard. Doc. 1 at ¶ 58. Brown claims that the traffic stop and subsequent incarceration caused her physical, emotional, and mental trauma. Doc. 1 at ¶ 59.

As part of her complaint, Brown alleges that Carlson was hired as a sheriff's deputy by defendant Curtis Hamburger, the Potter County Sheriff. Doc. 1 at ¶¶ 14–15, 60. Brown claims that Hamburger failed to perform an adequate background check before hiring Carlson. Doc. 1 at ¶¶ 61–66. Brown also claims that Hamburger became aware of misconduct allegations against Carlson after he was employed by the Potter County Sheriff's Department but did not take any action. Doc. 1 at ¶¶ 61–66. Carlson eventually failed to be granted a certification from the South

Dakota Law Enforcement Training Academy because he was terminated from a law enforcement position in Belfield, North Dakota, for misconduct.[2] Doc. 1 at ¶¶ 67–77.

Brown separates her complaint into four counts. Count I asserts a claim under 42 U.S.C. § 1983, with Brown alleging that Haupert and Holzer violated her Fourth Amendment rights by unlawfully arresting her. Doc. 1 at ¶¶ 78–90. Count II is also a § 1983 claim, with Brown alleging that Haupert and Holzer violated the Fourth Amendment by using excessive force during her arrest. Doc. 1 at ¶¶ 91–96. In Count III, Brown alleges that defendants David Mogard, chief of police for the City of Gettysburg, and Hamburger are liable for negligent hiring, supervision, and retention of Haupert and Carlson respectively. Doc. 1 at ¶¶ 97-111. In Count IV, Brown alleges that Mogard, Hamburger, Haupert, Holzer, the City of Gettysburg, and Potter County are liable for assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress. Doc. 1 at ¶¶ 112–121. Brown alleges this Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331, 1343; and 42 U.S.C. §§ 1983, 1988. Doc. 1 at ¶ 3. Brown requests damages sufficient to compensate her for the violation of her constitutional rights and under South Dakota law, compensatory, punitive and other exemplary damages, attorney's fees, and to permanently enjoin and prohibit Defendants from interfering with Brown's constitutional rights, specifically enjoining against retaliation and future excessive use of force. Doc. 1 at 18.

---

[2] Brown alleges that Carlson was terminated for misconduct that included: "Defendant Carlson engaged in an extra-marital affair. Defendant Carlson admitted to arranging liaisons with a female while on duty, traveling to her home in his patrol car immediately after his shift while still in his uniform, and engaging in sexual relations with her. The woman with whom Defendant Carlson had the affair stated that their sexual encounters took place while Defendant Carlson was on duty and that she met him inside city hall at the police department, at both of their homes, and in his patrol vehicle." Doc. 1 at ¶¶ 75. Information of this nature appears to be more unfairly prejudicial than probative of any fact that could be at issue in this case. Fed R. Evid. 403.

Defendants are separately represented based on whether they are employed by the City of Gettysburg or Potter County. Each group of defendants separately answered the complaint. Docs. 17, 18. Then Carlson, separate from the other defendants, filed a motion to dismiss for failure to state a claim and a supporting memorandum. Docs. 22, 23. Brown opposed the motion, Doc. 25, and Carlson replied, Doc. 26. This Court held a hearing to discuss Carlson's motion to dismiss. Doc. 27. For the reasons stated below, Carlson's motion to dismiss is granted.

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts must accept the plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept the plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Therefore, "[t]he factual allegations must be sufficient to raise a right to relief above the speculative level." Cook v. George's, Inc., 952 F.3d 935, 938 (8th Cir. 2020) (cleaned up and citation omitted). Courts are to construe complaints liberally. Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Spagna v. Phi Kappa Psi, Inc., 30 F.4th 710, 715 (8th Cir. 2022) (cleaned up and citation omitted).

## III. Discussion

Carlson contends that no count in the complaint alleges that he committed a constitutional violation against Brown, and both parties cite to cases involving § 1983 actions and police misconduct. Doc. 23 at 4. Yet, Carlson is not named as a defendant in Counts I[3] and II[4]—the § 1983 claims—nor in Count IV[5], a state law tort claim. Carlson is named as a defendant only in Count III alleging state law claims for negligent supervision that require the exercise of supplemental jurisdiction for this Court to hear. Citing to South Dakota law, Brown contends Carlson and Haupert are joint tortfeasors. Doc. 27 at 10 (citing SDCL §§ 20-9-1[6]; 15-8-11[7], 15-8-12[8], 15-8-15[9]).

Brown's theory is that had Carlson not "lied" about the number of prior warnings given to Brown, Haupert would not have issued a citation sparking the chain of events that eventually led to the excessive use of force and false arrest. Docs. 1, 24. Carlson counters that because Haupert had independent probable cause to stop Brown for speeding and issue her a citation, Carlson was not the "but for" cause of the subsequent events that led to Brown's arrest and detention. Doc. 23 at 5. Carlson asserts his only "active involvement" in the matter was transporting Brown to the

---

[3] The Fourth Amendment claim in Count I for "unlawful arrest" names Haupert and Holzer.

[4] The Fourth Amendment claim in Count II for excessive force likewise names just Haupert and Holzer.

[5] The state tort claim in Count IV names the City, County, Haupert and Holzer as defendants for committing assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress. Carlson is referenced but not accused of committing any of the tortious acts.

[6] SDCL § 20-9-1: "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence."

[7] SDCL § 15-8-11: "For the purposes of §§ 15-8-12 to 15-8-22, inclusive, the term "joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

[8] SDCL § 15-8-12: "The right of contribution exists among joint tort-feasors."

[9] SDCL § 15-8-15: "When there is such a disproportion of fault among joint tort-feasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tort-feasors shall be considered in determining their pro rata shares."

Walworth County jail. Doc. 23 at 5. Carlson argues that nothing he said—true or not—caused the stop or created the probable cause to arrest as that occurred independently based on Haupert's observations and radar reading which happened before any statement made by Carlson. Doc. 23 at 5-6. Brown responds that it is immaterial whether Haupert had probable cause, independent of what Carlson is alleged to have said, to stop Brown for a speeding violation because she was not arrested for speeding, but for assaulting a law enforcement officer after she attempted to drive away after discarding the citation Haupert attempted to give her. Doc. 25 at 7–10.

Brown asserts that Carlson's misinformation about the number of warnings she had been issued "precipitated every bit of actionable conduct." Doc. 27 at 10. Therefore, "but for" Carlson's misinformation, the conduct leading to Brown's claims would never have taken place. Doc. 27 at 11. She argues that while Haupert "mishandled and escalated what would have otherwise been a simple traffic stop, the stop would not have evolved beyond a warning absent" Carlson's lies. Doc. 27 at 11.

Whether analyzed under § 1983 or state law, Brown has not alleged sufficient facts against Carlson in her complaint to establish a plausible claim for relief against him. First, § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C § 1983. Analyzed under this statute, Carlson would not be liable anyway because "[l]iability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." Faulk v. City of St. Louis, 30 F.4th 739, 744 (8th Cir. 2022) (citation omitted). The Eighth Circuit has stated that "[a]uthorities not involved in the allegedly unconstitutional acts of their fellow public servants have not violated

constitutional rights and are entitled to qualified immunity." Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805 (8th Cir. 2010).

Assuming for the sake of this order that Haupert violated Brown's constitutional rights during the arrest, Brown still has not plead facts that, even if taken as true, establish that Carlson violated Brown's constitutional rights by misstating the number of times that Brown had been warned about speeding. Because subjective motivations to arrest a suspect are irrelevant to whether an arresting officer had objectively reasonable grounds to make an arrest, Carlson is not the "but for" cause of the arrest. See Peterson v. Kopp, 754 F.3d 594, 599 (8th Cir. 2014) (explaining that the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause" (cleaned up and citation omitted)). Haupert could have issued Brown the citation after clocking Brown over the speed limit independent of whether she received inaccurate information from Carlson. Likewise, if Haupert initiated an arrest because she (rightly or wrongly) believed Brown had attempted to strike her with her car as she drove away from the traffic stop, that would be an independent justification to arrest Brown absent any causal connection from Carlson.

This Court recognizes that "causation is generally a question of fact." Parrish v. Ball, 594 F.3d 993, 1000 (8th Cir. 2010). However, in § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft, 556 U.S. at 676. "[W]here the causal link is too tenuous such that the question is so free from doubt as to justify taking it from the [fact finder]," courts may decide the issue as a matter of law. Parrish, 594 F.3d at 1000 (causation standard is "rigorous" where plaintiff claims that a local government has not directly inflicted an injury) (cleaned up and citations omitted)). Here, the Court finds the link between Carlson and Haupert's alleged assault on Brown

too tenuous to establish any sort of § 1983 claim against Carlson. Besides, Carlson is not even named in the § 1983 causes of action.

Second, Brown fails to sufficiently plead facts that establish Carlson is liable under any state law claim.[10] Under Count III, Carlson would not be liable for negligent supervision of himself even if he is the "but for" cause of the chain events that led to Brown's injuries. See Parrish, 594 F.3d at 1001 (stating "a *supervising officer* can be liable for an *inferior officer's* constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise *the offending actor* caused the deprivation." (cleaned up and citation omitted) (emphasis added)). Carlson is not named under Count IV,[11] the state law claim for assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress, and for good reason. Brown's claim that Carlson is liable on such state law claims would fail for a similar reason as the § 1983 claims fail—Carlson is too removed to plausibly be the cause of the sequence of events that led to Haupert's arrest of and possible assault on Brown.

---

[10] For this Court to have jurisdiction over such state law claims, it would have to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) which permits a district court to handle state law claims that are a part of the same case or controversy as the claims that fall within the district court's original jurisdiction. See Engel v. Engel, No. 3:21-CV-03020-RAL, 2022 WL 2208875, at *8 (D.S.D. June 21, 2022). However, because no challenge to jurisdiction is made by the parties and this Court finds other reasons to dismiss Carlson from the action, it will not analyze whether it would be prudential to exercise supplemental jurisdiction.

[11] Carlson transported Brown to the Walworth County Jail after Haupert made the arrest, but no allegation of wrongdoing stems from that. Docs. 1, 26. Even if Haupert's arrest of Brown was unlawful, Carlson would not be liable simply for transporting a defendant to a county jail. See Doran v. Eckold, 409 F.3d 958, 965 (8th Cir. 2005) (stating "§ 1983 liability is personal" and that it is a well settled principle "that law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable"); see also Heartland, 595 F.3d at 805 ("Authorities not involved in the allegedly unconstitutional acts of their fellow public servants have not violated constitutional rights and are entitled to qualified immunity.").

As the Supreme Court of the United States has explained, "[w]hen the law grants persons the right to compensation for injury from wrongful conduct, there must be some demonstrated connection, some link, between the injury sustained and the wrong alleged. The requisite relation between prohibited conduct and compensable injury is governed by the principles of causation." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 342 (2013). Under South Dakota law, there is generally no duty "to protect one's fellow human beings from crime" unless a special relationship exists that imposes such a duty. Englund v. Vital, 838 N.W.2d 621, 629 (S.D. 2013) (cleaned up and citation omitted). One exception to this rule "provides that such a duty may arise if a person's affirmative acts or omissions create a foreseeable high risk of harm from criminal assault." Id. (cleaned up and citation omitted). Foreseeability is important because it relates to concepts like "proximate cause,"[12] "superseding causality,"[13] and helps determine whether this Court may determine the issue as a matter of law or whether it is a question for the jury. See Howard v. Bennett, 894 N.W.2d 391, 394–95 (S.D. 2017) (foreseeability is question of law when reasonable minds cannot differ).

The Restatement Second of Torts is instructive regarding liability created by acts of third parties committing intentional torts. It states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or

---

[12] In South Dakota, "[p]roximate cause is defined as a cause that produces a result in a natural and probable sequence and without which the result would not have occurred. Such cause need not be the only cause of a result. It may act in combination with other causes to produce a result." Howard, 894 N.W.2d at 395 (cleaned up and citation omitted).

[13] A superseding act occurs "[w]hen the natural and continuous sequence of causal connection between the negligent conduct and the injury is interrupted by a new and independent cause, which itself produces the injury, that intervening cause operates to relieve the original wrongdoer of liability." Howard, 894 N.W.2d at 395 (cleaned up and citation omitted).

should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Restatement (Second) of Torts § 448 (Am. Law Inst. 1965). It was Haupert, not Carlson, who reacted to Brown throwing the ticket out of the window by attempting to stop her vehicle and then proceeding to arrest her in what Brown alleges to be an unlawful use of excessive force. Even if Carlson should have realized that misstating the number of warnings given to Brown would increase the chances that Haupert would issue Brown a speeding citation, it was not foreseeable that the situation would devolve and escalate into an alleged violent assault. See Howard, 894 N.W.2d at 395 (noting proximate cause requires foreseeable consequences and foreseeable intervening causes are not superseding). Therefore, Haupert's intervening acts break the chain of causation eliminating Carlson as a matter of law as proximate cause of the sequence of events that led to Brown's injuries. See id. ("An intervening cause that cuts off liability is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone . . . produces the injury." (cleaned up and citation omitted)).

**IV. Conclusion**

For the reasons discussed above, it is

ORDERED that Carlson's motion to dismiss, Doc. 22, is granted.

DATED this 12 th day of August, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE